## VERMES CREDIT JEWELRY, Inc. v. FIREMAN'S FUND INS. CO.
Civ. No. 3070.

United States District Court
D. Minnesota, Fourth Division.
March 7, 1950.

Judgment Affirmed Nov. 24, 1950.

This matter is before the court on motion of the defendant to set aside the verdict of the jury and the resulting judgment for plaintiff, and for entry of judgment for defendant in accordance with the motion which defendant made at the trial for a directed verdict in favor of defendant. The motion is made pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

G. P. Mahoney and John S. Morrison, of Minneapolis, Minnesota, for defendant.

Benedict Deinard, and Leonard, Street & Deinard, all of Minneapolis, Minnesota, for plaintiff.

DONOVAN, District Judge.

On March 16, 1949, plaintiff's jewelry store was damaged by fire, with resultant loss of jewelry valued by plaintiff at more than $20,000. Plaintiff was insured against such loss to the extent of $20,000 under a so-called Jeweler's Block Policy. The policy covered all the valuables against loss or damage of all types from any means. Plaintiff made claim for its loss under the policy, but defendant denied the claim upon the theory that less than 60% of the valuables were in a safe or vault at the time of the fire. The proposal for insurance which plaintiff made to defendant, and which became a part of the insurance policy, included one section covering "Warranties As To Property Insured During Term Of Insurance At All Times When Premises Are Closed", wherein plaintiff stated that property equal to 60% of the total value of the property in the store would be kept in the vault or safe when the premises were closed. Defendant concedes that the remaining 40% need not have been so placed. Plaintiff admits that the store was closed

when the fire occurred, and that less than 60% of the valuables were in the safe or vault. At the trial the court directed a verdict for plaintiff upon the theory that the warranties required by defendant in the proposal, and which were included in the insurance policy, exceeded the statutory provisions of the Minnesota fire policy, and, therefore, that the breach thereof did not prevent plaintiff from recovering under the policy for his loss. Defendant now moves the court to set aside the jury's verdict, and to order entry of judgment for defendant in accordance with defendant's motion for a directed verdict at the time of trial.

Plaintiff contends that the warranty upon which defendant relies was void because it was not included in the statutory fire insurance policy found in Section 65.01 of 7 Minnesota Statutes Annotated. That statute enunciates the provisions to which a Minnesota fire insurance policy must conform. The warranty in question is not included in the statutory conditions, and plaintiff argues, therefore, that the claimed breach of the warranty is no defense.

Defendant contends (1) that plaintiff has failed to prove that defendant is a "fire company" within the statute, and therefore there is no proof of violation thereof, or of necessity of conformity therewith; and (2) that the policy in question is not subject to and limited by the statutory policy requirements of Section 65.01 because the instant policy is an inland marine insurance policy, not a fire insurance policy.

Section 65.01 of 7 Minnesota Statutes Annotated provides: "No fire company shall issue on property in this state any policy other than the standard form herein set forth, the blanks for which may be filled in print or in writing, and no condition, stipulation or term, other than those therein provided for, whether as to jurisdiction, limitation, magistrate, certificate or otherwise, shall be valid if inserted in any such policy, except as follows [then follows the permitted conditions and exceptions and the standard form policy]."

Defendant's first contention must be overruled. This statute by its very terms is aimed at the provisions which a fire insur- ance policy must contain. Its obvious purpose is to regulate the content of the policy and not to define the type of insurance company permitted to write the standard policy in compliance therewith. The emphasis of the statute is upon the type and contents of the policy. In Heim v. American Alliance Ins. Co., 147 Minn. 283, at pages 287, 238, 180 N.W. 225, at page 226, 1022, the Minnesota Supreme Court held: "The statute is founded on public policy. It was enacted to do away with the evils arising from the insertion in policies of insurance of conditions ingeniously worded, which restricted the liability of the insurer and gave the insured less protection than he might naturally suppose he was getting under his contract."

Certainly the legislature, in view of its manifest purpose and intent, did not mean to limit the application of Section 65.01 to certain types of insurance companies only. Such a situation would defeat the purpose of the statute. "The statute is a remedial one, and therefore it is to be construed liberally for the suppression of the mischief it was designed to do away with; it was enacted to promote beneficial public objects and therefore a broad construction is to be given to it. * * * Regard should be had for its object and purpose because of the light they cast upon the meaning of the language employed." Heim v. American Alliance Ins. Co., supra, page 288 Minn. page 227 N.W.

In view of the provisions of the statute relative to its purpose, the circumstances under which it was enacted and the public policy which it enunciates, as well as the liberal construction which the Minnesota Supreme Court holds must be applied, the term "fire company", contrary to defendant's contention, must be held to mean any company writing a fire insurance policy.

Defendant's claim that the statute is unambiguous and therefore applicable only to fire companies overlooks that the statute does not define "fire company", and that the court therefore must determine the scope of that phrase by application of the appropriate rules of statutory construction and interpretation. In light of that con-

struction and interpretation here, defendant company is subject to the statute. It wrote the insurance policy in question. It should also be noted that defendant's motion at the trial was not based on the factual matter now raised by its first contention here.

At the outset, several factors must be recognized in considering defendant's second contention. Section 65.01 never has been expressly repealed by any existing statute having to do with Jewelers' Block Policies. Implied repeals arise only when statutes are inconsistent, and such repeals are not favored. The inconsistency must clearly appear. Moreover, Section 65.01 is not limited in its coverage to realty. Its coverage extends also to personalty. In fact, the statutory policy which the Minnesota legislature has set forth as the standard fire policy for Minnesota specifically declares that "jewels, metals, patterns, models, scientific cabinets and collections, paintings, sculpture and curiosities" can be insured against fire if expressly mentioned in the policy.

Section 65.01 was intended to apply to fire hazards covered by policies which included protection against other hazards also. It is general in its terms with respect to fire hazards. Section 65.02 provides that automobile fire insurance is not subject to Section 65.01, if other hazards are included in the same policy. Obviously, such an exemption would be necessary only if Section 65.01 applied in the absence of the exemption. Thus, a legislative construction of Section 65.01 exists, and clearly contemplates that, unless a specific exemption exists, Section 65.01 applies to policies which combine fire hazard insurance with insurance against other hazards. No such specific exemption exists with respect to policies like the instant one or any other which insures jewelers. That Section 65.01 applies to combination policies also is sustained by the statute's purpose and objectives, as pointed out by the Minnesota Supreme Court in Heim v. American Alliance Ins. Co., supra. Abuses at which the statute is aimed are thereby avoided.

Inland marine insurance is of comparatively recent origin. It appears to have arisen when marine insurance was extended so it could apply to transportation on land. Consequently, in order for inland marine insurance to exist, transportation coverage must be involved. Northwestern Nat. Ins. Co. of Milwaukee v. Mortensen, 230 Wis. 377, 284 N.W. 13; 4 Appelman on Ins. Prac. and Law, § 2104. The Minnesota statutes recognize that the inland marine type of insurance has developed, for they grant insurance companies the right to issue such policies under appropriate charters. 7 Minnesota Statutes Annotated, Section 70.60 et seq. However, no statute appears to intend that Section 65.01 be limited so that a policy worded in form of transportation coverage should automatically and entirely become inland marine insurance which is not subject to Section 65.01 with respect to property which is not being transported and which is covered without respect to its being subject to transportation. Such a construction would destroy the aim of Section 65.01 and place a premium on form rather than substance.

In the instant case the property in question was covered by the policy without regard to whether the property was in fact to be transported. Protection during transportation was not its primary aim. It was not granted primarily in anticipation of the goods being transported or shipped. A reading of the policy as a whole shows that the insurance was granted primarily upon property which was not and would not be in transit, although some of it might be transported incidentally in the course of trade. When the policy was issued, no one knew if any of the property would be transported after the insurance became applicable to it. The forms of insurance proposals which defendant furnished to plaintiff contain inquiries about plaintiff's store, its employees, inventory, and the like. It does not aim primarily at the transportation features which would be involved. Information was sought primarily about the premises and matters which concerned the risk defendant would take as a result of insuring property located on the premises. Some of the endorsements, such as the "Window Smashing Endorsement" and the endorsement concerning strikes, riots, civil

commotions, typhoon, hurricane, tornado and cyclone, apply only when the jewelry is on the plaintiff's premises. No transportation is involved in connection with such endorsements.

If defendant's interpretation of the Minnesota statutes were adopted, Section 65.01 would be limited far more strictly than the legislature intended when the statute was enacted. Every floater policy, regardless of its extent, would be inland marine insurance not subject in any of its parts to statutory policies enunciated by the legislature. The insurance company, not the legislature, would then become the sole judge of what a policy insuring against fire should contain. This result is contrary to the public policy established by Section 65.01, which, up to this time, has not been repudiated by the legislature. The history and nature of inland marine insurance does not indicate that the legislature, by authorizing the writing of such insurance, intended that that type of insurance should be a substitute for long-established types of insurance for which public safeguards have been carefully established by the legislature and strictly protected by the courts. In Northwestern Nat. Ins. Co. of Milwaukee v. Mortensen, supra, 230 Wis. 377, 284 N.W. 13, 17, the insurer sought to establish that the policy involved was an inland marine policy, not a fire insurance policy subject to fire insurance rates. The policy insured certain works of art while they were located at specified places. The works of art could be covered by insurance during transportation if the insured paid additional premiums at the time of transportation. Transportation of the insured property, like here, however, was not certain. It depended on the discretion of the insured. The Wisconsin court held that the insured's option with respect to transportation coverage prevented the policy from being an inland marine insurance policy. Although the case may be distinguished if only the strict facts are considered, the basic principles of the case are applicable here. The mere fact that a policy is written in transportation form, or that transportation may be involved, does not make the policy an inland marine poli-

cy either primarily or in its entirety, or with respect to fire coverage. There, as here, the policy covered loss from all causes, with exceptions stated.

As the Wisconsin court pointed out: "Difficulties may arise in determining whether a particular policy of insurance is primarily a * * * policy protecting property in location and only incidentally a transportation policy."

Consideration of the instant case, however, in light of the Minnesota statutes and the facts before the court, shows that Section 65.01 applies here. In my opinion that was the legislative intent.

In view of the conclusions reached, defendant's motion must be, and hereby is, in all things denied. It is so ordered.

An exception is reserved to the defendant.