**HENNING NELSON CONSTRUCTION COMPANY, Respondent,**

v.

**FIREMAN'S FUND AMERICAN LIFE INSURANCE COMPANY, Appellant.**

**No. C5–84–1007.**

Court of Appeals of Minnesota.

Jan. 29, 1985.

Review Granted April 15, 1985.

Gary J. Meyer, Meyer, Nelson & Miller, Ltd., Robinsdale, for respondent.

Hugh J. Cosgrove, Cosgrove & Hanson, Minneapolis, for appellant.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

LESLIE, Judge.

Plaintiff Henning Nelson Construction Co. brought this action against defendant-appellant Fireman's Fund Insurance Co. for benefits Fireman's Fund refused to pay. The trial court found Fireman's Fund liable to plaintiff for $65,000.00. After the trial court denied Fireman's Fund's motion for amended findings, conclusions and order for judgment or for a new trial, Fire-man's Fund filed notice of appeal. We affirm.

## FACTS

Plaintiff Henning Nelson Construction Company was the general contractor for constructing an addition to a building. On June 21, 1979, a block wall in the addition collapsed. Testimony established that the following factors contributed to the collapse of the wall: vibration from a nearby excavator, from a crane installing spancrete, from trucks delivering heavy concrete planks, a large pile of dirt about 20 feet from the wall, moisture in the soil, and construction of the wall with concrete blocks rather than poured concrete.

Reconstruction of the wall occurred in two phases. The first phase ended in December 1979 and the second phase ran from August to November in 1980. The second phase was required after discovery of damaged utility lines.

The day after the wall collapsed plaintiff submitted a proof of loss to Fireman's Fund. Fireman's Fund's adjuster, Gary Rawie, investigated the claim. Plaintiff claims Rawie said the loss was covered, but Fireman's Fund claims Rawie informed plaintiff the policy did not cover its loss. Fireman's Fund did not provide plaintiff with a written denial until January 7, 1981. Plaintiff began this action on November 30, 1981.

## ISSUES

1. Did the evidence manifestly contradict the trial court's finding that plaintiff's mistaken inclusion of unrelated expenses was not fraud or misrepresentation?

2. Did earth movement, underground water pressures, or a design defect contribute to the collapse of the wall thereby bringing plaintiff's loss under an insurance policy coverage exclusion?

3. Is plaintiff's action for benefits under its policy with Fireman's Fund barred by the one year limit in the policy, or by the two year limit on actions under Minn.Stat. § 65A.01 (1978)?

4. Did plaintiff present sufficient evidence of damages to state a prima facie case?

## ANALYSIS

### I. Fraud and Misrepresentation

At trial plaintiff's vice president Mark Reinertson testified that invoices from two subcontractors, totalling over $11,000.00, were for costs of reconstructing the wall. Following introduction of contrary evidence Reinertson admitted that he had been mistaken, and the invoices were for the original construction of the wall.

Fireman's Fund argues that Reinertson misrepresented the amount of plaintiff's claim in his testimony. Fireman's Fund claims that under a provision of the insurance policy Reinertson's misrepresentations void the policy. The trial court, however, refused to void the policy because it found Reinertson's misstatements were honest mistakes.

 Under a provision voiding an insurance policy for misrepresentations or fraud only misstatements of fact made with the intent to defraud an insurer operate to void the policy. *Bahr v. Union Fire Insurance Co.*, 167 Minn. 479, 482, 209 N.W. 490, 491 (1926). Honest mistakes do not void a policy. *Goldberg v. Globe & Republic Insurance Co. of America*, 193 Minn. 600, 603, 259 N.W. 402, 403 (1935). Whether an erroneous loss estimate constitutes fraud or merely honest mistake is a question of fact. *Hodge v. Franklin Insurance Co.*, 111 Minn. 321, 324, 126 N.W. 1098, 1099 (1910).

 The trial court found Reinertson's erroneous testimony was the result of an honest mistake and not an attempt to defraud Fireman's Fund. It reasoned that the invoices were dated at the same time as the reconstruction work. Since evidence supports the trial court's finding it is not clearly erroneous.

### II. Exclusionary Clauses

Fireman's Fund claims factors which contributed to the wall's collapse brought the incident within certain exclusionary provisions of the policy, thereby releasing it from liability. The policy excluded coverage for damage contributed to by earthquake, volcanic eruption, landslide, or any other earth movement. It excluded coverage for damage contributed to by water below the surface of the ground, including that which exerts pressure on walls. Also excluded was coverage for damage directly or indirectly resulting from defective design of the wall.

Fireman's Fund alleges each exclusion applies because Reinertson testified that earth movement and underground water pressing on the wall contributed to its collapse. Reinertson also testified a poured concrete wall design would have been stronger than the block wall. Fireman's Fund concludes each of the above factors contributed to the loss, thereby excluding the loss from coverage.

 At trial Fireman's had the burden of proving an exclusion applied. *Caledonia Community Hospital v. St. Paul Fire and Marine Insurance Co.*, 307 Minn. 352, 354, 239 N.W.2d 768, 770 (1976). The trial court found the exclusions for earth movement, water, and design did not apply. We agree.

 Henning claims all risk policies like the one in this case insure covered risks despite contribution to the loss by an excluded risk. Henning cites *Fawcett House, Inc. v. Great Central Insurance Co.*, 280 Minn. 325, 328, 159 N.W.2d 268, 270 (1968), *Dow Chemical Co. v. Royal Indemnity Co.*, 635 F.2d 379, 388 (5th Cir.1981), and *Avis v. Hartford Fire Insurance Co.*, 283 N.C. 142, 195 S.E.2d 545, 549 (1973). *Dow* and *Avis*, however, do not necessarily support Henning's proposition since language supporting the proposition in those cases is dictum. In *Fawcett*, the court allowed the insured to recover on a policy excluding loss resulting from a change in temperature or humidity after vandals shut off a

heating system and freezing temperatures ruptured plumbing. The court held the policy applied since the direct cause was vandalism, which was completely responsible for the freezing temperatures operating on the plumbing. *Fawcett,* 159 N.W.2d at 270. Accordingly, Henning may recover if the direct and primary cause of the wall's collapse was a covered risk even though an excluded risk contributed to the loss.

### Earth movement

Henning claims the exclusion for earth movement applies only to natural disasters in the nature of those listed in the same provision: earthquake, volcanic eruption, and landslide. Henning relies both on the context of the exclusion and the policy behind many exclusions: protecting insurers from huge financial losses due to widespread natural disasters. *Wyatt v. Northwestern Mutual Insurance Co. of Seattle,* 304 F.Supp. 781, 783 (D.Minn.1969).

Henning's position is persuasively supported by *Government Employees Insurance Co. v. DeJames,* 261 A.2d 747 (Md. 1970). In *DeJames* a policy excluded coverage for losses contributed to by "any earth movement, including but not limited to earthquake, landslide, mud flow, earth sinking or rising or shifting * * *." The insured claimed loss coverage after the settling of earth made heavier by moisture partially pushed in a basement wall. The court applied the doctrine of *ejusdem generis* to construe "any earth movement" as the same in nature and character as those specified and held the insured's loss was not excluded. *Id.* at 752. We interpret this exclusion provision analogously and hold the earth movement not within the exclusion.

### Underground Water

Fireman's asserts the provision excluding coverage for losses contributed to by water beneath the surface exerting pressure on walls is applicable because Henning's witness Reinertson testified such water was a contributing cause to the collapse. Evidence showed a trace of rain had fallen the morning the wall collapsed, a half inch the day before, and a little over an inch 5 days earlier. The only other evidence regarding water in the soil was testimony that the soil was moist but that no puddles existed on the day of the collapse.

Henning argues the "underground water" provision must be read in the context of another paragraph excluding coverage for "flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not." We disagree with Henning and find no indication that the two exclusionary clauses must be read together.

Although underground water may include water from heavy rains, though not necessarily flooding, Fireman's offered only Reinertson's testimony that the moisture in the ground contributed to the collapse. The trial court reasonably found Fireman's failed to meet its burden of proof.

### Design

Fireman's also had the burden to prove the block construction of the wall constituted a defective design. The only evidence supporting Fireman's claim was Reinertson's testimony that a poured concrete wall would have been stronger than the block wall. Since Reinertson also testified the block design was appropriate for its intended use, the trial court could reasonably find the wall was not defectively designed.

### III. Limitation Periods

Fireman's argues that Henning's action is barred by a one year limitation of suit clause contained in the insurance policy. Henning initiated this action about 29 months after the wall collapsed.

Limitation of suit clauses in insurance policies are strictly construed against the party invoking them. *Prior Lake State Bank v. National Surety Corp.,* 248 Minn. 383, 388, 80 N.W.2d 612, 616 (1957). The policy limitation will only be enforced when the party seeking enforcement shows

it will be prejudiced. *Loram Maintenance of Way, Inc. v. Consolidated Rail Corp.,* 354 N.W.2d 111, 114 (Minn.Ct.App.1984).

 Fireman's claims it has been prejudiced because it lost the opportunity to monitor reconstruction costs. Henning, however, submitted substantial documentation of reconstruction costs incurred, providing Fireman's with a means to verify the need and amount of the costs. The effectiveness of this method is demonstrated by Fireman's successful cross-examination and rebuttal of Reinertson's testimony. In addition much of the reconstruction costs were incurred before the one year limitation period expired. Accordingly, Henning's suit is not barred by the policy's limitation of suit clause.

Alternatively, Fireman's contends the two year statute of limitations in Minn.Stat. § 65A.01 (1978) applies to bar suit. The limitation in Minn.Stat. § 65A.01, however, applies only to fire insurance policies. The case relied upon by Fireman's held that even though a fire insurance policy also covered non-fire risks, § 65A.01 applied to bar claims for fire loss not made within two years. *Fireman's Fund Insurance Co. v. Vermes Credit Jewelry, Inc.,* 185 F.2d 142 (8th Cir.1950), affirming *Vermes Credit Jewelry, Inc. v. Fireman's Fund Insurance Co.,* 92 F.Supp. 905 (D.Minn.1950). That case differs from this case where the loss did not result from a fire. The legislature, when providing a particularly short period for claims on fire insurance policies, surely did not intend the same limitation to apply to non-fire related claims even though the non-fire risk coverage was a floater on a fire insurance policy.

Since neither limitation of suit clause in the policy nor Minn.Stat. § 65A.01 apply, the six year limitation period in Minn.Stat. § 541.05 (1978) governs to allow Henning's suit.

## IV. Damages

 Fireman's asserts Henning failed to make out a prima facie case for damages by failing to distinguish original construction costs from reconstruction costs. Fireman's also argues Henning's calculation of labor costs was speculative. After reviewing over 100 pages of testimony and 80 pages of exhibits on reconstruction costs we cannot characterize the evidence as insufficient or speculative.

## DECISION

The judgment entered by order of the trial court is affirmed.