# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2504

_____

| | | |
|---|---|---|
| Capitol Indemnity Corporation, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Gerald Haverfield; Patricia Haverfield, | * | |
| doing business as Justin's Lounge, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Valerie Hunt; Michael Hunt, Sr., | * | |
| | * | |
| Defendant - Appellants, | * | |
| | * | |
| State of Missouri, | * | |
| | * | |
| Movant. | * | |

_____

Submitted:  February 16, 2000

Filed:    July 14, 2000

_____

Before RICHARD S. ARNOLD, HEANEY and LOKEN, Circuit Judges.

_____

HEANEY, Circuit Judge.

Michael and Valerie Hunt (the Hunts) appeal the district court's denial of their motion to dismiss or stay this federal declaratory judgment action, based on a pending parallel state court proceeding. Alternatively, they appeal the district court's denial of their summary judgment motion. Because the district court abused its discretion by maintaining jurisdiction in this case, we reverse and remand with instructions that the case be dismissed.

## I.      Background

Capitol Indemnity Corp. (Capitol Indemnity) insured Gerald and Patricia Haverfield (the Haverfields), doing business as Justin's Lounge, under both a Commercial General Liability and a Commercial Liquor Liability insurance policy. On July 7, 1996, Michael Hunt, Jr. was fatally stabbed outside of Justin's Lounge by a bar patron. Michael's parents, the Hunts, sued the Haverfields in Missouri state court, claiming that the Haverfields negligently caused Michael's death.

Soon thereafter, Capitol Indemnity filed this action in federal district court, seeking a declaratory judgment against the Haverfields. Capitol Indemnity asked the district court to declare that any claims arising from Michael Hunt's death were excluded from coverage under the insurance policies' assault and battery exclusion.[1]

---

[1] The assault and battery exclusion reads:

This insurance does not apply to <u>bodily injury</u>, <u>property damage</u> or <u>personal injury</u> arising out of <u>assault</u>, <u>battery</u>, or <u>assault and battery</u>. This exclusion applies to all coverages under this coverage part.
Definitions:
1.      <u>Assault</u> - A willful attempt or offer with force or violence to harm or hurt a person without the actual doing of the harm or hurt.
2.      <u>Battery</u> - Any battering or beating inflicted on a person without his or her consent.
3.      <u>Assault and Battery</u> - For purposes of this insurance, this term includes

The Hunts and Haverfields waived a jury in the state court proceeding, and the state court judge found that Gerald Haverfield negligently failed to protect Michael Hunt. She also held that Haverfield's negligence directly caused Michael's death, and awarded the Hunts $75,000.00 each. Following the judgment, the Hunts filed with the state court a Petition to Collect Insurance against Gerald Haverfield and Capitol Indemnity.

In response, Capitol Indemnity obtained leave in this declaratory judgment action to add the Hunts as defendants. The Hunts moved to dismiss or stay the action, arguing that the state court was the proper forum for adjudicating the issues surrounding the insurance policies' coverage. The district court denied their motion.

The parties filed cross motions for summary judgment in both the state and federal actions. The state court granted the Hunts' summary judgment motion on the ground that Capitol Indemnity's insurance policies covered the Hunts' claims. The federal court reached the opposite conclusion and granted Capitol Indemnity's motion for summary judgment, holding that Capitol Indemnity's policies excluded the Hunts' claims. The Hunts appeal.

## II.    Discussion

The Hunts first appeal the district court's denial of their motion to dismiss or stay this proceeding. Our court reviews for an abuse of discretion a district court's decision

---

assault and battery, and specially includes the ejection or exclusion with force or violence, or attempt thereof, of any person from the premises by the insured and his/her/its employees or agents.

(Appellants' App. at 271.)

-3-

to entertain a declaratory judgment action.  See Wilton v. Seven Falls Co., 515 U.S. 277, 289 (1995).

In Wilton, the Supreme Court considered the appropriate standard governing a district court's decision to dismiss or stay a federal declaratory judgment action during the pendency of parallel state court proceedings and adopted the discretionary standard set forth in its 1942 decision in Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942).  See 515 U.S. at 282-89 (rejecting the "exceptional circumstances" test developed in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976) and Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983) in favor of Brillhart's discretionary standard).  Under Brillhart, the district court must consider the scope and nature of the pending state court proceeding to ascertain whether the issues in controversy between the parties to the federal action, not foreclosed under applicable substantive law, can be better settled by the state court.  See Brillhart, 316 U.S. at 495; Wilton, 515 U.S. at 282.  If so, the district court must dismiss the federal action because "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."  Brillhart, 316 U.S. at 495.

The district court maintained jurisdiction on the grounds that Capitol Indemnity filed its complaint for a declaratory judgment five months before the Hunts received their state court judgment and six months before the Hunts filed their Petition to Collect Insurance.  We must consider the scope and nature of the state court proceeding to determine whether the district court abused its discretion by denying the Hunts' motion.

We note at the outset the obvious similarities between the state and federal actions.  Both actions involved the same parties, the same issue, the same insurance policies, and the same arguments.  Moreover, determining whether Capitol Indemnity's

-4-

insurance policies cover the Hunts' claims requires the courts to interpret the policies' assault and battery exclusion. Because the interpretation of insurance policies is governed by state law, see TNT Speed & Sports Ctr., Inc. v. American States Ins. Co., 114 F.3d 731, 732 (8th Cir. 1997), Missouri law also applies in both actions.

In addition, the federal court's application of Missouri law is complicated by a split in Missouri courts over whether an assault and battery exclusion, like the one contained in Capitol Indemnity's policies, covers the insured's negligence. The general rule in Missouri is that "where an insured risk and an excluded risk constitute concurrent proximate causes of an accident, a liability insurer is liable so long as one of the causes is covered by the policy." Braxton v. United States Fire Ins. Co., 651 S.W.2d 616, 619 (Mo. Ct. App. 1983). Cases from Missouri's Western District hold that where an injury arises out of an assault or battery caused by the insured's negligence, the assault and battery exclusion bars coverage of both the insured's negligence and the actual assault or battery. See Capitol Indem. Corp. v. Callis, 963 S.W.2d 247, 250 (Mo. Ct. App. 1997); Acceptance Ins. Co. v. Winning Concepts of Westport, Inc., 842 S.W.2d 206, 208 (Mo. Ct. App. 1992). On the contrary, cases from Missouri's Eastern District hold that the insured's negligence is a separate, concurrent, non-excluded cause, covered by the insurance policy. See Centermark Prop., Inc. v. Home Indem. Co., 897 S.W.2d 98, 103 (Mo. Ct. App. 1995); Braxton, 651 S.W.2d at 620. The Missouri Supreme Court has not yet resolved the conflict.

By entertaining this declaratory judgment action, the district court placed itself in the difficult position of predicting how the Missouri Supreme Court would resolve the conflict. See Gray v. Bicknell, 86 F.3d 1472, 1482-83 (8th Cir. 1996) (stating that where state law issue is undecided, federal court must place itself in state supreme court's position to determine how that court likely would resolve matter). In addition to the predictive nature of the district court's decision, the decision has no precedential value if and when Missouri's highest court decides the issue. See Stevens v. Pike County Bank, 829 F.2d 693, 696 (8th Cir. 1987) (Arnold, J., concurring).

At the time the district court denied the Hunts' motion to dismiss or stay the federal proceeding, a parallel state court action was pending that presented the same issues between the same parties. Further, both actions were governed solely by state law. Thus, the state court was in the better position to adjudicate the matter, and permitting this federal action to proceed was unnecessarily duplicative and uneconomical. Accordingly, the district court abused its discretion by denying the Hunts' motion, and we reverse and remand to the district court with instructions that the case be dismissed.[2]

Because we decide this appeal on the above grounds, we need not address the Hunts' remaining appellate argument.

LOKEN, Circuit Judge, dissenting.

Doubtless troubled by the prospect of inconsistent federal and state court decisions construing Capitol Indemnity Corporation's insurance policy, the court misapplies the Supreme Court's decision in Wilton v. Seven Falls Co., 515 U.S. 277 (1995), in a way that threatens to restrict federal court jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. I respectfully dissent.

In Wilton, following a state court judgment holding an insured liable to third parties, the insurer filed a federal court action seeking a declaratory judgment that its liability policy did not provide coverage. Because the suit was filed one day after the insured gave notice it would sue the insurer to recover under the policy in state court,

_____

[2]We recognize that a stay rather than dismissal is the preferred mode of abstention where the possibility of a return to the federal court remains. See International Assoc. of Entrepreneurs v. Angoff, 58 F.3d 1226, 1271 (8th Cir. 1995) (citing Wilton, 515 U.S. at 288 n.2). However, the state trial court has rendered its decision, and we see no reason for the case to return to federal court. Thus, dismissal rather than a stay is appropriate.

the federal court stayed the declaratory judgment action during the pendency of the parallel state court proceeding. In affirming, the Supreme Court emphasized the discretionary nature of a decision whether to stay an action properly commenced under the Declaratory Judgment Act:

> Like the Court of Appeals, we conclude only that the District Court acted within its bounds in staying this action for declaratory relief where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court. 515 U.S. at 290.

Procedurally, this case is very different from Wilton. First, Capitol Indemnity filed its declaratory judgment action before there was a judgment against its insureds, the Haverfields. Second, there were no "parallel proceedings in state court," that is, proceedings placing the coverage question in issue, for months after this declaratory judgment action was filed. Third, when the Hunts finally moved to stay or dismiss some nine months after the declaratory action began, the case was nearly ready for trial. The district court denied the motion, explaining:

> Upon review of the record before it, the Court notes that Capitol filed the instant Complaint for Declaratory Judgment on February 27, 1998, nearly five months before the Hunts obtained a judgment in state court, and nearly six months before they filed their Petition to Collect Insurance. This case has been advancing for approximately eleven months, and is set for trial on May 3, 1999. The Court will therefore continue to exercise jurisdiction in this matter, and deny the Hunts' motion to dismiss.

In my view, we have no valid basis for concluding that the district court abused its discretion to entertain this Declaratory Judgment Act lawsuit. True, at the time the district court denied the motion to stay or dismiss, there was a parallel state court proceeding putting the policy coverage question at issue. But under Wilton that is simply a necessary predicate for declining to exercise Declaratory Judgment Act

-7-

jurisdiction. In concluding the district court abused its discretion, this court notes that "both actions were governed solely by state law." That is often true when there are parallel federal and state court proceedings. The court then asserts that "the state court was in the better position to adjudicate the matter." But why? The federal action was filed first and presumably was closer to final disposition in the trial court. If the court is suggesting that Declaratory Judgment Act cases involving issues of state law must always be stayed or dismissed if there is a later-filed parallel action in state court, it has severely restricted this statutory jurisdiction in unprecedented fashion.

Since Wilton, at least two of our sister circuits have affirmed the exercise of Declaratory Judgment Act jurisdiction when insurance coverage was at issue and the federal action was filed first. See American Cas. Co. v. Krieger, 181 F.3d 1113, 1117-20 (9th Cir. 1999); United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493-94 (4th Cir. 1998). My research has uncovered 378 decisions citing Wilton. *Not one* of those decisions reversed a trial court for exercising its jurisdiction.

Some months after denying the motion to stay or dismiss, the district court granted summary judgment in favor of Capitol Indemnity, unaware that the state trial court had granted summary judgment deciding the coverage issue in favor of the Hunts some twelve days previously. The Haverfields and the Hunts do not raise on appeal the issue of whether the district court, or this court, should have deferred rendering a *final* decision in this Declaratory Judgment Act case until after the initially inconsistent state trial court decision became final on appeal. Instead, appellants argue only (i) that the district court abused its discretion in denying their earlier motion to stay or dismiss, and (ii) that the district court's interpretation of the Capitol Indemnity policy was wrong on the merits. In my view, a development that occurs after the district court properly exercises its jurisdiction, such as inconsistent initial rulings in the parallel federal and state court proceedings, is insufficient reason to reverse the initial exercise of discretion, thereby knocking askew the Eighth Circuit law interpreting and applying a federal statute, the Declaratory Judgment Act.

I conclude the district court did not abuse its discretion in denying the motion to stay or dismiss. I further conclude the district court properly granted summary judgment in favor of Capitol Indemnity for the reasons stated in its May 3, 1999, Memorandum and Order. I would therefore affirm, leaving for another day (and perhaps for another court) whether there are inconsistent state and federal court final judgments, and if so, which judgment is enforceable under full faith and credit principles.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.